IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ROBERT BROWN, #N62623, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 23-cv-1554-RJD |
| vs. | ) |
| | ) |
| SHAUN REIMAN, | ) |
| | ) |
| Defendant. | ) |

**ORDER**

**DALY, Magistrate Judge:**[1]

Plaintiff Robert Brown, an inmate of the Illinois Department of Corrections ("IDOC") who is currently incarcerated at Menard Correctional Center ("Menard"), brought this civil action on May 8, 2023, pursuant to 42 U.S.C. § 1983 for the alleged violation of his constitutional rights. Plaintiff specifically alleged in the Complaint that on July 19, 2022, between 5:00 p.m. and 7:30 p.m., while in Cell No. 104 of the East Cellhouse at Menard, Defendant Reiman,[2] the acting cellhouse sergeant at the time, maced Plaintiff for no reason as he stood at the back of the cell trying to get away from Defendant. (Doc. 1, pp. 8-9). Plaintiff seeks monetary damages. After the threshold review of the Complaint, Plaintiff was allowed to proceed on an Eighth Amendment excessive force claim against Defendant Reiman for spraying Plaintiff with mace for no reason on July 19, 2022. (Docs. 22 & 39).

---

[1] This matter has been assigned to the undersigned to conduct all proceedings, including the trial and final entry of judgment, through the parties' consent pursuant to 28 U.S.C § 636(c) and Federal Rule of Civil Procedure 73. (Doc. 46).

[2] The Complaint was originally addressed against Sgt. Raymond, who was later identified as Defendant Shaun Reiman. (Docs. 33 & 39).

This matter is now before the Court on Defendant's Motion for Summary Judgment on the Issue of Exhaustion of Administrative Remedies (Doc. 54). Plaintiff filed a response arguing that the motion should be dismissed because he submitted a grievance relating to this action on July 24, 2022, but never received a response. (Doc. 64, p. 1).[3] Plaintiff specifically stated that on July 24, 2022, while on a call pass to his personal property, he placed inside the grievance box a grievance about being maced on July 19, 2022, by Sgt. Reiman. (*Id.*). Plaintiff did not receive any acknowledgment, confirmation, or response from his Counselor, Jeffrey Mulholland. (*Id.*). Plaintiff also alleged in his response that he asked the following individuals to save any video footage of the mace incident: Lieutenant Koch on July 26, 2022, verbally; the Warden and Internal Affairs ("IA") on July 27, 2022, by placing a request on their respective boxes; IA Officer Gearheart on July 28, 2022, by handing him a written request; Correctional Officer Meade on July 29, 2022, and August 8, 2022, verbally, and by a written request directed to Lieutenant Snell. (Doc. 64, p. 1).

*Pavey Hearing*

An evidentiary hearing pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008) was originally held on February 11, 2025. (Doc. 82). After being sworn in, Plaintiff represented to the Court that he had not appropriately prepared for the hearing because he was under the mistaken impression that this was meant to be a settlement conference for another pending case. The Court reset the hearing for February 18, 2025, at which time it heard the testimony of Plaintiff as well as Jeffrey Mulholland, Correctional Counselor at Menard at all times relevant to the Complaint.

---

[3] Plaintiff titled his document as "Motion to Clarify" (Doc. 64) but, in essence, was a response to Defendant's Motion for Summary Judgment on the Issue of Exhaustion of Administrative Remedies. Plaintiff also filed a document titled "Motion to Deny Summary Judgment" (Doc. 75), in which he explained that the "Motion to Clarify" (Doc. 64) included his response to Defendant's Motion for Summary Judgment on the Issue of Exhaustion of Administrative Remedies. (Doc. 64, p. 1; Doc. 76, p. 3).

Plaintiff testified that following the mace incident of July 19, 2022, he wrote a grievance complaining about being maced for no reason in front of a camera while he was in the back of his cell. Because the housing unit was on lockdown, Plaintiff kept the grievance in his cell until July 24, 2022, at which time he got a "pass" to access his property. On that day, Plaintiff placed his "mace grievance" in the grievance box. He also submitted a request slip to see a doctor for his eye, headache, and pain in his groin area as a result of the mace incident.

Plaintiff further testified that during the relevant time, he filed two more grievances, which, however, did not grieve the actual mace incident. Specifically, in his second grievance, Plaintiff complained about some unidentified correctional officers' refusal to provide him with ice earlier on July 19, 2022. Plaintiff testified that he asked those correctional officers for ice, but they refused. Defendant Reiman later visited Plaintiff and offered him ice. Plaintiff refused to take the ice because he didn't know what Reiman "had done to it." Plaintiff explained that the grievance was only related to the mace incident in that Defendant Reiman maced Plaintiff because he became upset that Plaintiff refused to receive the ice. Plaintiff testified that he also filed a third grievance on or about July 28, 2022, at which time he complained about not yet having seen an eye doctor following the mace incident. Plaintiff confirmed twice that he did not grieve the mace incident in these two grievances.

Plaintiff further testified that on July 28, 2022, some IA officers visited Plaintiff about an unrelated matter, at which time Plaintiff handed to one of them a letter asking that the video footage of the mace incident be preserved. He also inquired about the status of his grievances and complained about not having received a response. Plaintiff never heard back from the IA officers.

Thereafter, on August 2, 2022, at around 9:30 a.m., Plaintiff saw Correctional Counselor Mulholland, who was touring Plaintiff's housing unit. Plaintiff gave Mulholland a request slip

asking him to preserve the video of the mace incident. Mulholland responded that he never received a grievance from Plaintiff regarding that incident, so it was impossible for him to preserve that video. Plaintiff then explained that he had filed three grievances, to which Mulholland responded that he hadn't received any of them and instructed Plaintiff to refile them. Plaintiff also asked Mulholland who was responsible for collecting the grievances, to which Mulholland replied that there were several counselors with access to the grievance boxes. Plaintiff explained that he asked Mulholland who else had access to the grievance box because Plaintiff had witnessed Mulholland retrieving items from the area where the grievance box was located for the last five days in a row.

Plaintiff also testified that despite being instructed by Counselor Mulholland to refile his grievance, he did not do so. Plaintiff explained that he had been advised in the past by the prison law library clerks that if a grievance was not properly processed and the requested relief was not provided, the inmate could proceed to the next step and file a suit. Plaintiff further stated that he was well aware of the grievance process, as evidenced by the Cumulative Counseling Summary, which shows Plaintiff's numerous grievances for less serious complaints. He argued that since he was aware of the process and had filed grievances in the past, he had no reason not to file a grievance for the mace incident, which was significantly more serious. Plaintiff insinuated that the Menard correctional counselors only recorded less serious grievances in his Grievance Log and Cumulative Counseling Summary and purposefully omitted those that could expose the staff to liability or threaten their employment with the IDOC.

Jeffrey Mulholland, Correctional Counselor at Menard at all times relevant to the Complaint, testified on Defendant's behalf. Mulholland explained that he, along with other correctional counselors, was responsible for collecting grievances from cell houses in rotation.

Mulholland explained that grievances were placed in locked boxes and retrieved by the correctional counselors, who then took the grievances to the grievance office. Correctional counselors did not read the grievances at the time they collected them. Once taken to the grievance office, the grievances were numbered and then assigned for the appropriate level of review. If deemed for a first-level review, they were sent back to a correctional counselor, who was required to respond within 30 days. While the grievance office staff also had access to the boxes, they did not collect the grievances from the boxes. Mulholland testified that if an inmate complained of not receiving a response to his grievance, he would advise him to write to the Grievance Office to confirm that the grievance was received. If the Grievance Office then responded that the grievance had not been received, Mulholland would instruct the inmate to refile the grievance. Mulholland was further asked how he would respond to an inmate asking him to preserve video footage, to which Mulholland responded that he did not know.

Mulholland also testified regarding Plaintiff's Cumulative Counseling Summary, which included any interactions with Plaintiff, including cell house tours, grievance filings, and responses thereto. Mulholland testified that between July and December 2022, Plaintiff's Cumulative Counseling Summary did not include any reference to a grievance filed on July 24, 2022. Further, Mulholland testified that he had no recollection of Plaintiff filing any grievance regarding the mace incident of July 19, 2022, or requesting retention of video footage.

Mulholland also discussed Plaintiff's Cumulative Counseling Summary entries between July and August of 2022.[4] Specifically, on August 1, 2022, Plaintiff requested a copy of his trust fund. On August 2, 2022, Mulholland toured Plaintiff's cell house and informed him about the

---

[4] Mulholland further testified on three entries between July 5, 2022, and July 18, 2022. Because those entries were made prior to the mace incident of July 19, 2022, they are not relevant to this motion.

grievance process. Mulholland testified that he did not have any other recollection regarding his conversation with Plaintiff on that day. On August 17, 2022, another correctional counselor received Plaintiff's request for copies of Grievance #260-6-22.[5] On August 25, 2022, the Grievance Office received Grievance #392-8-22 regarding the "consent form dated 8/16/2022" and forwarded it to Clinical Services for the Counselor's response.[6] On August 30, 2022, Mulholland responded to grievance #392-8-22 that "[i]ndividuals have the right to refuse any pass they wish," and that he was "[u]nable to verify claims."

## Discussion

***Summary Judgment Standard***

Summary judgment is appropriate only if the moving party can demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322(1986); *see also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005). The moving party bears the initial burden of demonstrating the lack of any genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017) (quoting *Anderson*, 477 U.S. at

---

[5] Based on Plaintiff's Cumulative Counseling Summary, Grievance #260-6-22 was filed on June 23, 2022, grieved issues with Plaintiff's headphones, and was unrelated to the mace incident of July 19, 2022. (Doc. 81-2, p.6).

[6] In Grievance #392-8-22, Plaintiff complained of being coerced into signing for blood pressure and temperature checks in order to see a tele-psychiatrist. In making an argument regarding the need for these checks, Plaintiff mentions that numerous attempts/requests for treatment he made after being maced by Sergeant "Raymond" on July 19, 2022, went unanswered. (Doc. 54-1, p. 39).

248). In considering a summary judgment motion, the district court views the facts in the light most favorable to and draws all reasonable inferences in favor of the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted). While courts generally may not resolve factual disputes on a motion for summary judgment, when the motion pertains to a prisoner's exhaustion of administrative remedies, "the Seventh Circuit has instructed courts to conduct an evidentiary hearing and resolve contested issues of fact regarding a prisoner's efforts to exhaust." *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008); *Roberts v. Neal,* 745 F. 3d 232, 236 (7th Cir. 2014).

*Exhaustion Requirement*

Pursuant to 42 U.S.C. § 1997e(a), prisoners are required to exhaust available administrative remedies prior to filing lawsuits in federal court. 42 U.S.C. § 1997e(a). "[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies." *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002). "[A] suit filed by a prisoner before administrative remedies have been exhausted must be dismissed; the district court lacks discretion to resolve the claim on the merits, even if the prisoner exhausts intra-prison remedies before judgment." *Perez v. Wisconsin Dep't of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999). "[A]ll dismissals under § 1997e(a) should be without prejudice." *Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004).

*IDOC Grievance Process*

An inmate in the custody of the Illinois Department of Corrections must first submit a written grievance within 60 days after the discovery of the incident, occurrence, or problem to his or her institutional counselor unless certain discrete issues are being grieved. 20 ILL. ADMIN. CODE § 504.810(a). If the complaint is not resolved through a counselor, the grievance is

considered by a Grievance Officer who must render a written recommendation to the Chief Administrative Officer — usually the Warden — within two months of receipt, "when reasonably feasible under the circumstances." *Id*. §504.830(e). The CAO then advises the inmate of a decision on the grievance. *Id.*

An inmate may appeal the decision of the Chief Administrative Officer in writing within 30 days to the ARB for a final decision. *Id.* § 504.850(a); *see also Dole v. Chandler*, 438 F.3d 804, 806–07 (7th Cir. 2006). The ARB will submit a written report of its findings and recommendations to the Director, who shall review the same and make a final determination within six months of receipt of the appeal. 20 ILL. ADMIN. CODE § 504.850(d) and (e).

An inmate may request that a grievance be handled as an emergency by forwarding it directly to the Chief Administrative Officer. *Id.* § 504.840. If it is determined that there exists a substantial risk of imminent personal injury or other serious or irreparable harm, the grievance is handled on an emergency basis, which allows for expedited processing of the grievance by responding directly to the offender. *Id.* Inmates may further submit certain types of grievances directly to the Administrative Review Board, including grievances related to protective custody, psychotropic medication, and certain issues relating to facilities other than the inmate's currently assigned facility. *Id.* at § 504.870.

Further, to satisfy the requirement of exhaustion of administrative remedies, the grievance must contain factual details regarding each aspect of the inmate's complaint, including the name of each person who is the subject of or who is otherwise involved in the complaint. ILCS § 504.810(c). The Seventh Circuit has interpreted this as requiring the inmate plaintiff to identify names only to the extent practicable to serve a grievance's function of giving "prison officials a fair opportunity to address [an inmate's] complaints." *Maddox v. Love*, 655 F.3d 709, 722 (7th

Cir.2011); *Glick v. Walker*, 385 F. App'x 579, 582 (7th Cir. 2010).

*Availability of Administrative Remedies*

While the Seventh Circuit requires strict adherence to the exhaustion requirement, an inmate is required to exhaust only those administrative remedies that are available to him, meaning procedures that an inmate may use "to obtain some relief for the action complained of." *Wallace v. Baldwin*, 55 F.4th 535, 542 (7th Cir. 2022) (quoting *Ross v. Blake*, 578 U.S. 632, 643, 136 S.Ct. 1850, 195 L.Ed.2d 117 (2016)) (internal quotation marks omitted). The Supreme Court has recognized three categories of practically unavailable administrative remedies. *Id.* First, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id.* (citing *Ross*, 578 U.S. at 643–44, 136 S.Ct. 1850). Second, administrative remedies are unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* Finally, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.*

The Seventh Circuit has also found that administrative remedies become "unavailable" when prison officials "do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting." *Dole*, 438 F.3d at 809. An administrative remedy is also rendered unavailable "if essential elements of the procedure for obtaining it are concealed." *Hurst v. Hantke*, 634 F.3d 409, 411 (7th Cir. 2011) (citation omitted) (holding that administrative remedies became unavailable where the ARB denied a state inmate's late grievance for his failure to provide evidence of his incapacitation where neither the administrative rules nor

the prison authorities advised the inmates of such requirement). At the same time, the Seventh Circuit has cautioned that the "unavailable" exception is meant to be narrow. *Wallace*, 55 F.4th at 543. Thus, "[m]ere ambiguity might not make the administrative process unavailable" and "the inmate should err on the side of exhaustion" when "the administrative process is susceptible of multiple reasonable interpretations." *Reid v. Balota*, 962 F.3d 325, 329 (7th Cir. 2020) (holding that a two-month period of silence rendered administrative remedies unavailable only because the prisoner had no other reason to believe that anyone was "looking into" his grievance).

In *Dole*, the court found that an inmate, Dole, who placed a timely ARB appeal in his chuckhole for mailing but whose grievance was apparently lost, did all that he could to follow exhaustion procedures. *Dole*, 438 F.3d at 811. The court explained that because Dole had properly followed procedure and prison officials were responsible for the mishandling of his grievance, it could not be said that Dole had failed to exhaust his remedies. The court noted, however, that its holding could be different "if the ARB had given Dole instructions on how to proceed and Dole had ignored or improperly followed those instructions." *Id.* Likewise, in *Brengettcy v. Horton*, 423 F.3d 674 (7th Cir.2005), the Seventh Circuit held that an inmate who had filed several unanswered grievances had exhausted his administrative remedies because he was told by the prison officials that grievances sometimes get "torn up," and there was no instruction on what an inmate must do when a grievance went unanswered. *Id.* at 681-82.

On the other hand, in *Cannon v. Washington*, 418 F.3d 714 (7th Cir.2005), the Seventh Circuit found that the inmate had failed to exhaust his administrative remedies when he did not strictly follow the instructions provided by the ARB. *Id.* at 718. There, an inmate timely mailed a grievance to the ARB, but the grievance was returned to him because it contained insufficient postage. *Id.* at 717. The inmate immediately resent the grievance with the proper postage, but

the ARB marked it untimely because it received it after the deadline for filing had passed. *Id.* The ARB told the inmate that it could reconsider its denial if the inmate submitted a copy of his original grievance along with a new grievance explaining the delay. *Id.* Instead of following the ARB instructions, the prisoner wrote directly to the IDOC Director to seek reconsideration. *Id.* His request was denied because the inmate failed to follow the ARB's instructions. *Id.* The court concluded that "by failing to take advantage of the procedure offered by the ARB for reconsidering the grievance, Cannon failed to exhaust his administrative remedies." *Id.* at 718.

Likewise, many district courts in this Circuit have found that an inmate did not exhaust his administrative remedies where a grievance got lost or mishandled, and the inmate failed to follow the correctional officer's instructions to resubmit it. *See e.g., Whitfield v. Wexford Health Sources, Inc.*, No. 22-CV-1528-DWD, 2024 WL 3860991, at *3-4 (S.D. Ill. Aug. 19, 2024) ("This evidence all credibly demonstrates that the grievance process was available and that there was a fail-safe mechanism for grievances that an inmate thought may be lost."); *Goings v. Jones*, No. 19-CV-888-DWD, 2023 WL 4591763, at *8 (S.D. Ill. July 18, 2023) ("With the ability to ask for a status update, and with documented responses to his request for a status update in the cumulative counseling summary, the evidence shows that even if Plaintiff somehow had a few grievances get entirely lost, he was made aware of this issue with ample time to resubmit the grievances."); *Blakes v. Foutch*, No. 3:11-CV-932-GPM-DGW, 2013 WL 5288158, at *3 (S.D. Ill. Sept. 18, 2013 (finding *Dole* distinguishable because "Dole was unable to file a timely appeal after he discovered his grievance was not received because the sixty-day window had expired" while Blake "discovered his grievance was not received within the sixty-day window, and still failed to re-file his grievance.").

Some courts have even gone one step further to find that an inmate does not properly

exhaust the available administrative remedies where he takes no follow-up steps to inquire about the status of an unanswered grievance. *See, e.g.*, *Stallings v. Cook Cnty.*, No. 11 C 7349, 2013 WL 3669623, at *5–6 (N.D. Ill. July 12, 2013) (noting that "[s]imply submitting a grievance and not receiving a response is insufficient to establish that the grievance process is unavailable" where there was ample time for the inmate to timely resubmit his grievance); *Logan v. Emerson*, No. 10 C 4418, 2012 WL 3292829, at *5 (N.D. Ill. Aug. 9, 2012) ("As Logan provides no evidence that he pursued the lost/destroyed grievance or attempted to complete the process, either by appeal or by filing a new grievance, the court finds that he has failed to fully exhaust [his administrative remedies]"); *Taylor v. Cook County,* No. 11 C 7427, 2013 WL 2285806, at *4 (N.D.Ill. May 23, 2013) (holding that an inmate failed to use available remedies when he failed to follow up with his unanswered grievance even though he was familiar with the grievance process and had received responses to other grievances); *Nesbitt v. Villanueva*, No. 09 C 5299, 2010 WL 4932423, at *4 (N.D. Ill. Nov. 29, 2010) (holding that an inmate had failed to exhaust his administrative remedies where he timely became aware that his grievance got lost and "he allowed an inordinate amount of time to elapse without following up or appealing").

*Discussion*

Here, Plaintiff's record with the ARB reflects receipt of eight grievances since June 2022, while Plaintiff's grievance file contains three additional grievances dated after June 2022. (Docs. 54-1 & 54-2). Plaintiff does not argue that those grievances exhausted his excessive force claim for the mace incident of July 19, 2022.[7] Rather, Plaintiff's argument is that he should be excused

---

[7] The only grievance contained in Plaintiff's grievance file that references the mace incident is Grievance #392-8-22, dated August 16, 2022. (Doc. 54-1, p. 39). Therein, Plaintiff complained of being coerced into signing for blood pressure and temperature checks in order to see a tele-psychiatrist. In making an argument regarding the need for these checks, Plaintiff mentions that numerous attempts/requests for treatment he made after being maced by Sergeant "Raymond" on July 19, 2022, went unanswered. (Doc. 54-1, p. 39). Plaintiff has not relied on Grievance #392-8-22, dated August 16, 2022, to show that he exhausted his administrative remedies, and for a good reason. The

from the exhaustion requirement because he filed a grievance on July 24, 2022, specifically grieving the mace incident of July 19, 2022, but the grievance was lost or mishandled due to no fault of his own.

There is a genuine dispute as to whether Plaintiff placed his grievance in the institution's grievance box on July 24, 2022. Plaintiff alleges that he did. Defendant argues that if the grievance was placed in the grievance box, as Plaintiff alleges, it would have been included in his grievance file or referenced in the Cumulative Counseling Summary. It did not. The Court also notes that Plaintiff's Cumulative Counseling Summary shows that a few days following the mace incident, Plaintiff had requested copies of other unrelated grievances. There is no indication that Plaintiff requested copies of the grievance he allegedly submitted regarding the mace incident. In any case, the Court finds that it does not need to resolve this factual dispute because, based on Plaintiff's own testimony, even if his grievance was lost, he still failed to take all available steps to exhaust his administrative remedies.

Plaintiff testified that on August 2, 2022, he asked Counselor Mulholland to preserve the video footage of the incident on July 19, 2022. Per Plaintiff's testimony, Counselor Mulholland advised Plaintiff that he had not received any grievance about that incident and instructed Plaintiff to resubmit it. Plaintiff admitted he did not proceed with refiling a new grievance as Counselor Mulholland instructed him. At the time Plaintiff was advised that his grievance could not be found, only 14 days had passed since the mace incident. This allowed Plaintiff ample time to resubmit his grievance within the 60-day timeframe set forth under Section 504.810(a) of the Illinois Administrative Code. Accordingly, the grievance process was not unavailable to Plaintiff.

---

grievance does not state that Plaintiff was maced without a reason and does not seek any relief regarding the mace incident. (Doc. 54-1, p. 37-39). Accordingly, this grievance could not have exhausted Plaintiff's administrative remedies because it did not put the institution on notice of Plaintiff's excessive force claim.

Plaintiff's reliance on the *Dole* line of cases is misplaced. In *Dole*, the prison officials conceded that Dole had properly filed his initial grievance. Here, on the other hand, the filing of the grievance is disputed. Further, unlike in this case, in *Dole*, the regulations were not clear on how to proceed once a timely grievance was lost, and the ARB had not provided the inmate with any instructions on how to proceed after becoming aware that the grievance was lost. Here, on the other hand, Plaintiff was specifically instructed to refile his grievance but chose not to do so. Likewise, this case is distinguishable from *Brengettcy* because there, the inmate had not been provided with instruction on what an inmate must do in case a grievance went unanswered. Rather, this case is similar to the above-referenced line of cases by other district courts in this Circuit, which have found that an inmate does not exhaust administrative remedies when he fails to follow the correctional officer's instructions to resubmit his lost or mishandled grievance.

Under the specific facts of this case, the Court cannot find that the administrative remedies became unavailable to Plaintiff once his grievance got lost. Even assuming that there was an ambiguity in the process inmates should follow when grievances get lost, Plaintiff was required to err on the side of exhaustion and resubmit his grievance as he was specifically instructed to do. Instead, Plaintiff chose to rely on faulty legal advice. Under this scenario, the alleged failure to respond to Plaintiff's grievance did not render the grievance process unavailable because Plaintiff was timely instructed on the steps he needed to take to complete the grievance process.

The Court also finds speculatory and not credible Plaintiff's allegation that prison staff, and specifically Counselor Mulholland, may have mishandled his grievance because it contained serious allegations against correctional officers. Plaintiff did not identify any other serious grievances that were lost or mishandled. In fact, Plaintiff's ARB grievance history contains at least two grievances with serious allegations against correctional officers, including allegations of

fabricated and false disciplinary tickets, that were filed within less than a year from the mace incident of July 19, 2022.  (Doc. 54-1, pp. 9-27).   Plaintiff was clearly not obstructed from filing and exhausting those grievances.

Plaintiff testified that he saw Counselor Mulholland picking up documents from the grievance boxes for five days straight.   However, Plaintiff testified that that happened on the days prior to his August 2, 2022, conversation with Mulholland, while he had placed his grievance in the grievance box on July 24, 2022.  In any case, this allegation does not support Plaintiff's argument that his grievance was intentionally mishandled.  This is even more evident by Plaintiff's own testimony that on August 2, 2022, Mulholland instructed Plaintiff to resubmit his grievance.  If Mulholland wanted to obstruct Plaintiff from submitting a grievance regarding the mace incident, he would not have provided Plaintiff with information as to the proper steps he should take to resubmit it.  This is especially true in light of the fact that on August 2, 2022, Plaintiff still had sufficient time to resubmit his grievance within the 60-day timeframe of Section 504.810(a) of the Illinois Administrative Code.

Finally, the Court notes that Plaintiff testified that after submitting his mace grievance, he filed two more grievances.  In the first one, he complained about being denied ice by other correctional officers prior to the mace incident.  In the second, he grieved the denial of medical care following the mace incident.  None of those grievances appear in Plaintiff's grievance file, his record with the ARB, or in his Cumulative Counseling Summary.  (Docs. 54-1; 54-2; 81-2). In any case, Plaintiff confirmed at the hearing that those grievances did not detail the mace incident or Defendant's alleged use of excessive force.   Even if those grievances were properly filed, based on Plaintiff's testimony, they did not contain sufficient information to apprise the institution of his excessive force claim.   Therefore, they could not possibly exhaust Plaintiff's administrative

remedies as to the mace incident.

Therefore, the Court concludes that Plaintiff failed to exhaust his administrative remedies on his excessive force claim against Defendant Reiman.

## Conclusion

For the reasons set forth above, Defendant's Motion for Summary Judgment on the Issue of Exhaustion of Administrative Remedies (Doc. 54) is **GRANTED**. This matter is **DISMISSED without prejudice**. The Clerk of Court is **DIRECTED** to enter judgment accordingly.

**IT IS SO ORDERED.**

**DATED: February 27, 2025**

*s/ Reona J. Daly*
**Hon. Reona J. Daly**
**United States Magistrate Judge**